## Case No. 1,858.

### BRIDGE et al. v. BROWN et al.

[Holmes, 205;[1] 3 O. G. 121; 6 Fish. Pat. Cas. 236.]

Circuit Court, D. Massachusetts. Jan. Term, 1873.

#### PATENTS—INFRINGEMENT.

The purpose of an apparatus, as stated in the specification of a patent, was "to utilize exhaust steam from a steam-engine, for the purpose of making extracts from tan-bark and other materials." The claim of the patent was for the combination of the exhaust-pipe with certain other devices, "in the manner and for the purpose substantially as set forth." Held, that the patent was not infringed by an apparatus for making extract from tan-bark, in which exhaust steam was not used, but the steam was taken direct from the boiler of the engine, through a pipe of such dimensions as would effectually prevent its practical use in the apparatus in connection with the exhaust-pipe of a steam-engine.

[Cited in Innis v. Oil City Boiler Works, 41 Fed. 789.]

Bill in equity [by Abel E. Bridge against Rufus Brown and others] for an injunction to restrain alleged infringement of letters-patent for an improved apparatus for making extracts from tan-bark, granted S. W. Pingree Oct. 24, 1865; and for an account of profits. The apparatus consisted essentially of a leach, in which the bark was placed; boxes close to the leach, and com-

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

municating with it by means of numerous perforations in their sides; and a pipe and branch pipes, through which the exhaust steam of a steam-engine was conducted to the boxes, and thence through the perforations to the bark in the leach. The cross-section of the boxes was considerably larger than the pipes, so as to allow expansion of the steam carried to them. By this expansion and partial condensation of ·the steam in the pipes and boxes, back pressure on the piston of the engine ʾwas prevented. The claim of the patent was for "the boxes, G, with perforated sides, applied in combination with the exhaust-pipe, D; and leach, A, or its equivalent, in the manner and for the purpose substantially as set forth."

In the ·apparatus of the defendants, exhaust steam was not used, but the steam was taken direct from the engine-boiler to the boxes, through a pipe so small that it could not be used to conduct the exhaust steam to the boxes, without great back pressure on the piston of the engine.

[This apparatus is shown in the above engraving. D is the pipe which receives the steam from the exhaust-pipe of the engine and conveys it to the branch pipes, E, through which it passes into the perforated boxes G. A is the leach, in which is placed the bark or other material from which the extract is to be obtained. The mode of operation is described in the opinion of the court. The claim was as follows: "The boxes G, with perforated sides, applied in combination with the exhaust-pipe D and leach A, or its equivalent, in the manner and for the purpose substantially as set forth."] [2]

[Bill dismissed.]

T. L. Wakefield, for complainants.

S. B. Ives, Jr., S. Lincoln, Jr., and George L. Roberts, for defendants.

SHEPLEY, Circuit Judge. Letters-patent No. 50,626, issued Oct. 20, 1865, to S. M. Pingree, for a new and improved apparatus for making extracts from tan-bark. The patentee declares that "the object of this invention is to utilize exhaust steam from a steam-engine for the purpose of making extracts from tan-bark and other materials." The invention consists, according to the specification of the patent, in the arrangement of a box with perforated sides and bottom, in combination with a pipe which conducts the exhaust steam ʾto the leach containing the

bark or other material to be extracted, in such manner that the steam is free to expand and made to condense partially as it passes from the exhaust-pipe into said box, and all back pressure on the piston is avoided,· and at the same time the full benefit of the action of the steam on the bark or other material is obtained. The patentee then describes a leach, which is provided with a tightly fitting cover, and which, for the sake of convenience, may be divided off by transverse partitions into a series of compartments. A pipe extends over the entire length of the leach, and branch pipes lead from this pipe down into the several compartments. The bark or material to be extracted rests on slotted or perforated false bottoms, and the branch pipes lead into boxes which are situated close to the leach. The cross-section of the boxes is considerably larger than that of the pipes, so that the steam in passing into the same is free to expand; and the sides of said boxes are perforated with a large number of holes through whích the steam passes out to the bark. The pipe, D, is intended to connect with the exhaust-pipe of a steam-engine, and, as the exhaust steam passes through said pipe and the branch pipes into the boxes, it expands readily, and a partial condensation takes place, both within said boxes and outside of the same, and by this partial condensation, combined with the rapid expansion of the steam as it reaches the boxes, all back pressure on the piston of the engine is avoided. Thus, he says, "By my apparatus the exhaust steam is utilized, and a great saving in fuel is effected." The claim of the patent is for "the boxes, G, with perforated sides, applied in combination with the exhaust-pipe, D, and leach, A, or its equivalent, in the manner and for the purpose substantially as set forth."

The patent is for an apparatus for making extracts from tan-bark and other material; not for the process of extracting the tannin, but for an apparatus consisting (first) of the boxes, G, with perforated sides, applied in combination with (second) the exhaust-pipe, D, and (third) leach, A, or its equivalent, (fourth) in the manner, and (fifth) for the purpose, substantially as set forth.

In the state of the art at the date of the invention of Pingree there was nothing new in the form or structure of his leach, nor in the mode or purpose of its use, apart from the introduction into it of steam from the exhaust-pipe of an engine, instead of from a steam-pipe taking its supply directly from a boiler. The boxes with perforated sides are not claimed except as combined with the exhaust-pipe and leach, in the manner set forth in the patent, and for the purpose set forth. This purpose was the utilization ·of exhaust steam, and the consequent saving of fuel in making extracts from tan-bark and other materials. There is no evidence in this case that the defendants used the

complainants' combination. They do not use the boxes, G, in combination with the exhaust-pipe, D, in the manner or for the purpose set out in the patent, that manner and purpose being in the patented apparatus that the exhaust-pipe should conduct the exhaust steam to the leach in such manner that the steam is free to expand, and made to condense partially as it passes from the exhaust-pipe into said box, and all back pressure on the piston is avoided, and at the same time the full benefit of the action of the steam on the bark is obtained. Defendants do not use their boxes to conduct exhaust steam to the leach, nor for the purpose of condensing the steam and avoiding back pressure on the piston. They do not use exhaust steam, but take their steam directly from the boiler. They do not use their boxes in combination with complainants' exhaust-pipe, for they do not use any exhaust-pipe or any equivalent for it. The pipe used by them is not like the pipe D, the exhaust-pipe of a steam-engine, and is not capable of being used for that purpose. The dimensions of the pipe are such as would effectually prevent its use for any such purpose, in connection with the process for which it is used by the respondents. It is contended by complainants, that although the apparatus patented by Pingree is designed for exhaust steam, their patent would cover its use for any cognate purpose. It is a sufficient answer to this position, that it has already been shown that defendants do not use all the elements of the combination as described and claimed in the patent. Defendants' steam-pipe is not the exhaust-pipe D, or the equivalent of the pipe D, described in Pingree's claim. No case of infringement is made out, and complainants' bill must be dismissed. Decree accordingly.

[NOTE. For a decree dismissing the bill of the same complainants to restrain an alleged infringement by the same defendants of patent for a process for extracting tan-bark in conjunction with the apparatus which was the subject-matter of the litigation herein, see Bridge v. Brown, Case No. 1,857.]